UNITED STATES of America, Plaintiff,

v.

Richard DIAMOND, Defendant.

No. 86 Civ. 2121 (JMW).

United States District Court,
S.D. New York.

April 14, 1987.

Paul K. Milmed, U.S. Attys.' Office, S.D. N.Y., New York City, for plaintiff.

Gregory J. Pond, of the firm Abbott & Bushlow, New York City, for defendant.

WALKER, District Judge:

## INTRODUCTION

Plaintiff United States of America ("the United States") has brought the instant action against Defendant Richard Diamond ("Diamond"), alleging that defendant submitted false Medicare claims. Plaintiff moves for partial summary judgment on its claim under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("the FCA").

For the reasons set forth below, plaintiff's motion for summary judgment is granted.[1]

## STATEMENT OF FACTS

In May 1985, Diamond, a New York physician, was tried as a criminal defendant in this Court for submitting fraudulent Medicare claims to a fiscal intermediary of the federal government. On May 23, 1985, following a jury trial before Judge Leonard Sand of this Court, Diamond was convicted on a total of 39 counts: 15 counts of mail fraud, in violation of 18 U.S.C. § 1341, *et seq.*, and 24 counts of submitting false claims, in violation of 18 U.S.C. § 287, *et seq.* The jury necessarily found that de-

---

1. Under the local rules of this Court, a party filing papers in opposition to a motion must include a separate memorandum of points and authorities. Defendant's failure to include such a memorandum constitutes an independent ground for granting plaintiff's motion. S.D.N.Y. R. 3(b).

fendant had wrongfully acquired $549.04 in Medicare funds through his unlawful acts.

In March 1986, Plaintiff United States filed the instant action against Defendant Diamond, asserting causes of action sounding in the FCA, common law fraud, and unjust enrichment.

## DISCUSSION

### Liability

The FCA provides that the federal government may bring a civil action against an individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval...." 31 U.S.C. § 3729 (Supp.1986). Plaintiff moves for partial summary judgment on those 39 of its 48 FCA claims that are based on defendant's 39-count criminal conviction. Plaintiff argues that defendant's conviction establishes his FCA liability on these 39 claims, and estops defendant from relitigating any issues of liability.

"[A] prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding...." *Emich Motors v. General Motors*, 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 (1951); *United States v. Jacobson*, 467 F.Supp. 507, 508 (S.D.N.Y.1979). The government may assert estoppel based on the prior criminal conviction where "all questions relevant to civil liability ... were 'distinctly put in issue and directly determined' in the criminal prosecution...." *Id.* at 508 (quoting in part *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915)).

█ "It is well established that a prior criminal conviction establishes the facts underlying the conviction conclusively for purposes of a subsequent civil proceeding instituted by the federal government on the basis of the same facts." *United States v. Cripps*, 460 F.Supp. 969, 975 (E.D.Mich. 1978). Accordingly, where a defendant is convicted of a criminal offense based on his submission of false Medicaid or Medicare claims, as in the instant case, such a conviction forecloses "all questions relevant to civil liability" under the FCA. *United States v. Jacobson, supra,* 467 F.Supp. 507, 508 (S.D.N.Y.1979). *See also United States ex. rel. Fahner v. Alaska,* 591 F.Supp. 794 (N.D.Ill.1984); *United States ex. rel. Davis v. Long's Drugs, Inc.,* 411 F.Supp. 1144, 1146–49 (S.D.Cal.1976).

"The elements of a claim under ... [the FCA] are: (1) that the defendant presented or caused to be presented to an agent of the United States a claim for payment or approval; (2) that the claim was false or fraudulent; (3) that the defendant knew the claim was false or fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim." *Blusal Meats, Inc. v. United States,* 638 F.Supp. 824, 827 (S.D.N.Y.1986). After a review of Judge Sand's charge to the jury that convicted defendant, this Court concludes that the government proved each of these elements in its May 1985 criminal prosecution.

█ Accordingly, this Court finds that defendant is estopped from disputing his liability on 39 of plaintiff's FCA claims. Plaintiff's motion for partial summary judgment is granted.

### Damages

█ The FCA provides that a person who submits a false claim to the government is liable for: (1) twice the amount of damage sustained by the government, (2) forfeiture of $2,000 for each false claim submitted, or caused to be submitted, and (3) the costs of the civil action. 31 U.S.C. § 3729 (Supp.1986). In the instant action, plaintiff does not seek costs.

The government asserts that it sustained damages of $549.04 as a result of defendant's false claims, a figure that defendant does not contest. Accordingly, this Court awards damages of twice this amount, or $1,098.08.

Plaintiff also seeks a forfeiture of $2,000 for each false claim submitted, or caused to be submitted, by defendant. The jury convicted defendant with respect to 39 separate claims. At $2,000 for each claim, the government seeks a total forfeiture of $78,-

000. This method of calculating FCA forfeiture penalties has received explicit approval in a number of decisions. *See, e.g., United States ex. rel. Fahner v. Alaska,* 591 F.Supp. 794, 800–01 (E.D.Ill.1984) ($2,000 forfeiture awarded for each of 551 Medicaid claims submitted by defendant); *United States v. Jacobson,* 467 F.Supp. 507, 508 (S.D.N.Y.1979) (Weinfeld, J.) ($2,000 forfeiture awarded for each of 18 false Medicaid invoices); *United States v. Silver,* 384 F.Supp. 617, 620 (E.D.N.Y. 1974), *aff'd mem.,* 515 F.2d 505 (2d Cir. 1975) ($2,000 forfeiture awarded for each of twelve forged checks presented to the federal government).

Defendant disputes this method of forfeiture calculation, focusing on the lack of a relationship between the $549.04 that defendant acquired from the filing of his false claims and the $78,000 forfeiture penalty. However, neither the FCA nor cases interpreting this act state that forfeiture penalties should bear a direct relationship to the amount obtained through the filing of false claims. Instead, substantial authority supports the view that "[t]his forfeiture provision is mandatory; it leaves the trial court without discretion to alter the statutory amount." *United States v. Hughes,* 585 F.2d 284, 286 (7th Cir.1978). *See also United States v. McLeod,* 721 F.2d 282 (9th Cir.1983); *United States v. Jacobson, supra,* 467 F.Supp. at 508.

In arguing that the Court should exercise its discretion to reduce the amount of the forfeiture penalty, defendant cites some cases where courts have shown flexibility in applying the penalty provision of 31 U.S.C. § 3729. For example, in *Peterson v. Weinberger,* 508 F.2d 45 (5th Cir. 1975), the Fifth Circuit Court of Appeals upheld a district court's allowance of only $100,000 in forfeiture penalties based on 120 claims, instead of the $240,000 award sought by the government. The *Peterson* court wrote that the government had "tacitly" agreed that the district court had some discretion with respect to the amount of forfeiture penalties. *Id.* at 55. In *United States v. Greenberg,* 237 F.Supp. 439, 445 (S.D.N.Y.1965), the government argued that this Court could impose 34, 8, or 3 forfeiture penalties. The Court awarded the government 3 forfeiture penalties.

In the instant case, the 39 fraud and false statement counts cover 23 different patients treated by defendant. Several of the claims (based on Counts 24, 41, 43, 44, 45, and 49 in defendant's criminal indictment), were submitted on the same date and with respect to the same patient as other, independent claims. Thus, if this Court possessed discretion, it could perhaps calculate the total forfeiture penalty by awarding $2,000 per patient, or $46,000; by eliminating subsequent claims on the same day as to the same patient, yielding a total forfeiture penalty of $66,000; or even, as defendant urges, by treating plaintiff's mail fraud actions and false claims submissions as each constituting one forfeiture claim, and thus imposing a total penalty of $4,000.

The Court is troubled by the possibility that a forfeiture penalty automatically applied to each proved count of a criminal Medicare fraud indictment could work an injustice in a particular case, but cannot conclude from the statute or its legislative history that the Court has discretion to reduce either the number of claims upon which the forfeiture is sought or the amount of the forfeiture awards. The result in the instant case might be different if the Court of Appeals for this circuit were to hold that district courts possessed such discretion under the FCA. However, absent such a holding, this Court will follow the formula for FCA damage calculations employed by Judge Edward Weinfeld in *United States v. Jacobson, supra,* 467 F.Supp. at 508, which mandates a $2,000 penalty for each false invoice submitted by a defendant. Accordingly, the Court awards plaintiff $2,000 on each of its 39 FCA claims, for a total forfeiture of $78,000.

To summarize, the Court awards plaintiff $1,098.08, pursuant to the FCA "double damage" remedy, and $78,000, pursuant to the statute's forfeiture provision, for a total award of $79,098.08.

## CONCLUSION

Plaintiff's motion for partial summary judgment is granted. The Court awards plaintiff $79,098.08 damages on 39 of its FCA claims.

SO ORDERED.